# EXHIBIT A

Electronically Filed - Probate Kansas City - December 17, 2019 - 12:44 PM

**IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI**
**PROBATE DIVISION**

| | | |
|---|---|---|
| **JESSIE BENTON,**<br>**ANTHONY GUDE,**<br>**DARIA LYMAN, and**<br>**CYBELE BENTON McCORMICK,**<br><br>**Petitioners/Plaintiffs,**<br><br>**v.**<br><br>**UMB BANK, N.A.**<br>**Serve: James "Jim" Rine**<br>**President & Chief Executive Officer**<br>**1010 Grand Avenue**<br>**Kansas City, Missouri 64106.**<br><br>**Defendant/Respondent.** | ) | **Case No. ________________**<br><br>**Div. ____** |

**PETITION (PZ)**

**COME NOW**, Petitioners/Plaintiffs Jessie Benton, Anthony Gude, Daria Lyman, and Cybele Benton McCormick (hereinafter collectively referred to as "Plaintiffs"), by and through their attorneys Langdon & Emison, LLC, Boyda Law LLC, and Withers, Brant, Igoe & Mullenix, P.C., and for their cause of action against Respondent/Defendant UMB Bank, n.a. state and allege the following known facts and facts upon information and belief:

**PARTIES**

1. Plaintiff Jessie Benton is the daughter of Thomas Hart Benton ("Benton") and Rita P. Benton. She is a resident of Chilmark, Massachusetts.

2. Plaintiff Anthony Gude is the son of Plaintiff Jessie Benton and the grandson of Benton and Rita P. Benton. He is a resident of Frankfort, Kansas.

3. Plaintiff Daria Lyman is the daughter of Plaintiff Jessie Benton and the granddaughter of Benton and Rita P. Benton. She is a resident of Cambridge, Massachusetts.

4. Plaintiff Cybele Benton McCormick is the daughter of Plaintiff Jessie Benton and



Case 4:21-cv-00710-SRB Document 1-1 Filed 10/01/21 Page 2 of 48

Electronically Filed - Probate Kansas City - December 17, 2019 - 12:44 PM

the granddaughter of Benton and Rita P. Benton. She is a resident of Vineyard Haven, Massachusetts.

5. Plaintiffs are and were, at all times material, beneficiaries of the Benton testamentary trust and the Rita P. Benton testamentary trust (hereinafter collectively referred to as the "Benton Trusts"). A true and accurate copy of the Last Will and Testament of Thomas Hart Benton and subsequently executed codicils are attached hereto as **Exhibit 1** and a true and accurate copy of the Last Will and Testament of Rita P. Benton and subsequently executed codicils are attached hereto as **Exhibit 2**.

6. City Center Bank was chartered by W.T. Kemper and Associates. Rufus Crosby Kemper (also known as R. Crosby Kemper Sr.), the son of W.T. Kemper, joined his father and purchased an interest in City Center Bank. In 1919, R. Crosby Kemper Sr. became president of City Center Bank.

7. By national charter, the bank became City National Bank and Trust Company ("City National") in 1934. R. Crosby Kemper Jr. joined City National in 1950 and became president in 1959.

8. Missouri Bancshares, Inc. was formed in 1969 as a one-bank holding company.

9. The holding company's name was changed to United Missouri Bancshares, Inc. in mid-1971 when it became a multi-bank holding company. United Missouri Bancshares, Inc. acquired regional banks and became a billion-dollar corporation.

10. In 1994, the name of the holding company was changed to UMB Financial Corporation.

11. In 2000, R. Crosby Kemper III took over as president of UMB Financial Corporation and UMB Bank, n.a. He also became senior chairman of UMB Financial Corporation

Electronically Filed - Probate Kansas City - December 17, 2019 - 12:44 PM

and UMB Bank, n.a. In addition, the board appointed R. Crosby Kemper III to chairman and CEO of both companies. R. Crosby Kemper III was also inducted as chairman of the Missouri Bankers Association.

12. In 2004, Mariner Kemper was named chairman and CEO of UMB Financial Corporation. The same year, R. Crosby Kemper Jr. retired as senior chairman from the company and its board of directors.

13. UMB Bank, n.a. was and remains the lead bank of the holding company UMB Financial Corporation.

14. United Missouri Bank of Kansas City, n.a. and Defendant UMB Bank, n.a. are successor or related entities of City National by way of merger, conversion, consolidation, or name change.

15. The Benton Trusts appointed City National, including its successors by any merger, conversion, or consolidation as Executor and Trustee. **Ex. 1** at 18; **Ex. 2** at 15.

16. United Missouri Bank of Kansas City, n.a. and its successors, including Defendant UMB Bank, n.a., (hereinafter collectively referred to as "UMB"), is and was, at all times material, a Trustee of the Benton Trusts described herein that were established for the benefit of Plaintiffs. Defendant UMB Bank, n.a., is a national banking association with its main office located at 1010 Grand Boulevard, Kansas City, Jackson County, Missouri. UMB therefore is considered a citizen of Missouri. *See Wachovia Bank v. Schmidt*, 126 S. Ct. 941, 945 (2006). UMB can be served with process at that location (1) by serving an officer, partner, or managing or general agent, or (2) by leaving the copies at any business office of UMB with the person having charge thereof, or (3) by delivering copies to its registered agent or to any other agent authorized by appointment or required by law to receive service of process.

Electronically Filed - Probate Kansas City - December 17, 2019 - 12:44 PM

## JURISDICTION AND VENUE

17. Pursuant to § 456.2-202, RSMo,[1] and the terms of the Benton Trusts, this Court has jurisdiction over this matter.

18. Pursuant to § 456.2-204 and the terms of the Benton Trusts, venue is appropriate in this Court because the Benton Trusts at issue in this proceeding were or could have been registered with this Court. Further, the Benton Trusts were filed and probated with this Court upon the death of Benton and Rita P. Benton.

19. As stated *supra*, UMB is a citizen of Missouri. Therefore, this action is not removable based on diversity of citizenship because UMB is "a citizen of the State in which this action is brought." *See* 28 U.S.C. § 1448.

## FACTS COMMON TO ALL CLAIMS

### A. Thomas Hart Benton: A Great American Artist

20. Thomas Hart Benton was born in Neosho, Missouri on April 15, 1889.

21. Benton became one of the most famous painters of the Regionalist Movement in American art, which included others such as John Steuart Curry and Grant Wood, and achieved national and international recognition during and after his lifetime.

22. Benton lived, studied, and worked in various locations throughout his life, including New York and Paris.

23. Benton painted all regions of America, including poor, rural areas, and aimed to make modern art available to everyone. Through his paintings, he called attention to social problems in America.

24. Benton received commissions to paint murals for organizations such as the Whitney

[1] All statutory citations are to the Revised Statutes of Missouri.

Museum of American Art, the Indiana Pavilion at the 1933 Chicago World's Fair, the Missouri State Capitol, and the Harry S. Truman Presidential Library and Museum in Independence, Missouri.

25. On December 24, 1934, Benton was featured on one of the earliest color covers of *Time* magazine.

26. During his lifetime, Benton's artwork was exhibited in major art galleries and museums across the United States, including institutions such as the Metropolitan Museum of Art, the Museum of Modern Art, and the Whitney Museum of American Art in New York City.

27. Benton's work has been and is currently displayed in many of the most prestigious museums, government buildings, and significant office buildings all over the country, including the Metropolitan Museum of Art, the Whitney Museum of American Art, the Los Angeles County Museum of Art, the Detroit Institute of Arts, the Nelson-Atkins Museum of Art (Nelson-Atkins), the National Gallery in Washington, D.C., the Peabody Essex Museum in Salem, Massachusetts, the Amon Carter Museum of American Art, the Milwaukee Art Museum, the Truman Presidential Library, and the Missouri State Capitol building.

28. Examples of Benton's notable works include:

Electronically Filed - Probate Kansas City - December 17, 2019 - 12:44 PM

Electronically Filed - Probate Kansas City - December 17, 2019 - 12:44 PM



a. *America Today*, a room-sized mural comprising ten canvas panels displayed at the Metropolitan Museum of Art and described by the Museum as "one of the most remarkable accomplishments in American art of the period[;]"



b. *A Social History of Missouri*, prominently displayed in the Missouri State Capitol;

Electronically Filed - Probate Kansas City - December 17, 2019 - 12:44 PM



c. *Persephone* (1938-39), displayed at the Nelson-Atkins;



d. *Achelous and Hercules* (1947), displayed at the Smithsonian American Art Museum;

Electronically Filed - Probate Kansas City - December 17, 2019 - 12:44 PM



e. *The Kentuckian* (1954), displayed at the Los Angeles County Museum of Art;



f. *Independence and the Opening of the West* (1959-62) in the Harry S. Truman Presidential Library and Museum in Independence, Missouri; and

Electronically Filed - Probate Kansas City - December 17, 2019 - 12:44 PM



g. *Turn of the Century Joplin* (1972).

29. Benton is featured in textbooks, particularly regarding American art; scholarly publications; and the Ken Burns' documentary, *Thomas Hart Benton* (1988), which was nationally broadcast on PBS.

30. Benton also influenced other notable American artists such as Jackson Pollock, who was a student of Benton.

31. Benton's paintings have sold for millions of dollars, including:



a. *Ozark Autumn* (1949), sold in 2015 for almost $5 million;



Case 4:21-cv-00710-SRB Document 1-1 Filed 10/01/21 Page 10 of 48

Electronically Filed - Probate Kansas City - December 17, 2019 - 12:44 PM



b. *T.P. and Jake* (1938), sold in 2015 for over $3 million;



c. *Navajo Sand* (1926/1966), sold in 2018 for $2,652,000;

Electronically Filed - Probate Kansas City - December 17, 2019 - 12:44 PM



d. *Night Firing of Tobacco* (1943), sold in 2017 for $2,652,500;



e. *Little Brown Jug* (c. 1941), sold in 2009 for $2,434,500;

Electronically Filed - Probate Kansas City - December 17, 2019 - 12:44 PM



f. *Flood Disaster* (1951), sold in 2011 for $1,874,500; and



g. *Shipping Out* (1942), sold for $1,025,000 in 2014.

Electronically Filed - Probate Kansas City - December 17, 2019 - 12:44 PM

**B. The Benton Family and the Benton Trusts**

32. In 1922, Benton married Rita Piacenza Benton.

33. Together they had two children, Thomas Piacenza ("T.P.") Benton (born 1926) and Jessie Benton (born 1939).

34. Benton died in Kansas City, Missouri on January 19, 1975.

35. His wife, Rita P. Benton, passed away just a few months later on April 9, 1975.

36. Prior to their deaths, the Bentons executed wills and testamentary trusts to provide for the administration of their respective marital and non-marital estates.

37. Two codicils to Thomas H. Benton's Last Will and Testamentary Trust were executed prior to his death. Although the Second Codicil contained a scrivener's error labeling it as the First Codicil, said error was corrected by handwritten note. Benton's Last Will and Testamentary Trust, including both codicils, were admitted in the Probate Court of Jackson County on March 11, 1975.

38. A codicil to Rita P. Benton's Last Will and Testamentary Trust was executed. Rita P. Benton's Last Will and Testamentary Trust, including the codicil, was admitted in the Probate Court of Jackson County on June 11, 1975.

39. The Benton Trusts designated UMB to be Co-Executor and Co-Trustee.

40. The Benton Trusts appointed certain individuals to serve as Co-Executors and/or Co-Trustees.

41. The final settlement of Benton's estate and transfer of property to UMB and Lyman Field, as Co-Trustees of his testamentary trusts, occurred on May 31, 1979.

42. The final settlement of Rita P. Benton's estate and transfer of property to UMB and Lyman Field, as Co-Trustees of her testamentary trusts, occurred on June 22, 1979.

43. The Benton Trusts provided that if the individual Executors and Trustees named failed to qualify or declined or ceased to act, then UMB would act as sole Executor and Trustee.

44. UMB has served as the Trustee of the Benton Trusts since May 31, 1979 and June 22, 1979.

45. UMB held itself out at the time of the creation of the Benton Trusts to be possessed of special expertise to exercise the responsibilities of a Trustee charged with preserving the value of a collection of fine art and has continued to hold itself out as possessing such expertise.

46. The Benton Trusts included directions on certain charitable bequests, real estate management, the care and management of several thousand works of art, and discretionary payouts over the lifetime of the beneficiaries and others.

47. Upon Benton's death, UMB was to divide the residuary estate into two shares, a marital share ("an amount equal in value to the maximum estate tax marital deduction allowable in determining the Federal estate tax on [Benton's] gross estate") and a non-marital share (all of the "residuary estate and other property as is not included in the [marital share] and shall consist of all of said residuary estate and other property").

48. Upon the death of Rita P. Benton, the Benton children, T.P. and Jessie, became the primary beneficiaries of the Benton Trusts, which provided that they would be cared for during their lifetimes. The Benton Trusts also provided that discretionary payouts could be made for grandchildren.

49. In February 2010, T.P. Benton died at his home in Massachusetts. T.P. Benton had no children.

50. At this time, Jessie Benton is the primary beneficiary of the Benton Trusts.


Case 4:21-cv-00710-SRB Document 1-1 Filed 10/01/21 Page 15 of 48
Electronically Filed - Probate Kansas City - December 17, 2019 - 12:44 PM

Electronically Filed - Probate Kansas City - December 17, 2019 - 12:44 PM

51. Upon the death of Jessie Benton, the Benton Trusts provide that the Trustee is to make disposition among the Plaintiffs Anthony Gude, Daria Lyman, and Cybele Benton McCormick in accordance with the provisions of the Benton Trusts.

52. As described in the Benton Trusts, Jessie Benton has exercised her power of appointment such that upon her death the principal and undistributed net income of the Benton Trusts shall be divided and distributed in accordance with her Last Will and Testament. *See* **Ex. 1** at 6; **Ex. 2** at 3-4.

**C. Administration of the Benton Trusts by UMB**

53. UMB, when it became Co-Trustee of the Benton Trusts, took possession, custody, and control of the property of the Bentons' estates and testamentary trusts.

54. In addition to stocks, cash, real estate, and other assets, the property of the Bentons' estates and testamentary trusts included a collection of hundreds of paintings, drawings, and lithographs by Benton and other prominent artists. The property also included items such as correspondence between Benton and President Harry S. Truman, the original manuscripts of the articles and books written by Benton, and other intangible assets, such as copyrights.

55. Pursuant to the terms of the Benton Trusts, UMB was to hold, manage, invest, and reinvest the property of the Benton Trusts and distribute the net income and principal in accordance with the trusts' terms. Any net income of the Benton Trusts that UMB did not distribute to any of the beneficiaries was to be "accumulated and added to the principal of the [Benton Trusts]."

56. The Benton Trusts expressly authorized and empowered UMB, as Trustee of the Benton Trusts, with a number of rights, powers, and obligations.

57. With respect to the property of the Benton Trusts, the Benton Trusts directed UMB "[t]o sell, lease, pledge, mortgage, transfer, exchange, convert or otherwise dispose of, or grant options with respect to, any and all property at any time forming a part of my estate or of the trust

Electronically Filed - Probate Kansas City - December 17, 2019 - 12:44 PM

estate. . . for prices and upon such terms, credits and conditions as they may deem advisable . . . ." **Ex. 1** at 13; **Ex. 2** at 10.

58. With respect to Thomas H. Benton works of art, the Benton Trusts expressly provided and required UMB to "handle them in such a way as to maintain the market value and demand for them . . . ." **Ex. 1** at 12; **Ex. 2** at 9-10.

59. With respect to investments, the Benton Trusts directed UMB "[t]o purchase or otherwise acquire, and to retain, whether originally a part of my estate or subsequently acquired, any and all stocks, bonds, notes or other securities, or any variety of real or personal property, including stocks or interest in investment trusts and common trust funds, as they may deem advisable . . . ." **Ex. 1** at 13; **Ex. 2** at 10.

60. The Benton Trusts required UMB to provide the beneficiaries with adequate, complete, and accurate annual accountings. Specifically, the Benton Trusts state:

> The Corporate Trustee shall render an account at least once each twelve months to each of the adult and otherwise legally competent beneficiaries and to the natural or legal guardian, if any, of each minor or otherwise legally incompetent beneficiary then receiving or entitled to receive income from any of the trusts hereunder. The account shall show the receipts, disbursements, and distributions of principal and income since the last accounting and the invested and uninvested principal and the undistributed income on hand at the time of the accounting. …

**Ex. 1** at 20; **Ex. 2** at 17.

61. UMB did not follow Benton's express directions as to the management of the Benton Trusts, including regarding the disposition of his works of art and other property.

**D. Failure to Marshal Assets and Lack of Business Plan**

62. UMB, by accepting the role of Trustee of the Benton Trusts, was under a legal duty to control and manage multi-million dollar trusts with tangible and intangible assets.

63. Despite this fact, UMB failed to marshal and probate all assets of the Benton Trusts.

64. UMB failed for decades to marshal real property belonging to the Benton Trusts

Electronically Filed - Probate Kansas City - December 17, 2019 - 12:44 PM

that is valued at millions of dollars.

65. UMB failed to complete an inventory of all property transferred to it via the Benton Trusts.

66. UMB failed to develop a comprehensive plan to manage the property of the Benton Trusts, including thousands of items of Benton art and associated rights.

67. UMB did not create or follow a plan to promote the legacy of Benton and increase the value of Benton art.

**E. Incomplete Records and Lost Property**

68. UMB has held itself out to the public as having special knowledge and skills regarding fine art management, including cataloging and inventory services.

69. UMB's first "inventory" of the Benton Trusts is referred to as the "706s," completed primarily for tax purposes near the inception of the Benton Trusts.

70. UMB has represented to the beneficiaries that the 706s constitute a complete inventory of the property of the Benton Trusts, including the artwork.

71. However, the 706s do not include all of the artwork and other property of the Benton Trusts.

72. The 706s do not include full and accurate descriptions and/or values of the artwork.

73. The 706s group artwork pieces together without reference to specific identifiers, such as a description of the nature and character, size, or subject of each asset.

74. UMB as Trustee has used several different systems to attempt to track the artwork and other property of the Benton Trusts through the years.

75. The various systems used to track Benton's artwork and the other property of the Benton Trusts cannot be related back to each other due to deficiencies, such as incomplete descriptions, changing systems of identification, and the lack of a key to follow through each

Electronically Filed - Probate Kansas City - December 17, 2019 - 12:44 PM

system.

76. No comprehensive inventory with an acceptable description and photograph of each piece of art has ever been completed by UMB.

77. UMB's inventories have lacked information critical to a proper inventory.

78. UMB has not inventoried other property belonging to the Benton Trusts, including the archival materials of Benton.

79. Due to the above-described deficiencies, UMB's records make tracing a given piece of art from the date that UMB took possession of the property of the Benton Trusts in 1976 to present difficult and perhaps, in some circumstances, not possible as required for UMB to fulfill its lawful duties as Trustee.

80. Determining the current or past inventory of the Benton Trusts is further frustrated due to various deficiencies in the sales ledgers of the Benton Trusts.

81. UMB has sold artwork in "batches" without specifying the artwork included and/or individual sales prices for each piece of art in the "batch."

82. The sales ledgers for the Benton Trusts are missing descriptive information throughout, including, but not limited to, the following deficiencies:

a. Lack of a sales price;

b. Incomplete or lack of numbers or other methods of identification;

c. Batch sales without specification of the artwork included and/or individual sales prices;

d. Lack of information regarding the purchaser; and

e. Bequests without additional information.

83. Likely over one hundred irreplaceable pieces of art are unaccounted for and lost

Electronically Filed - Probate Kansas City - December 17, 2019 - 12:44 PM

from the Benton Trusts because of UMB's actions and inactions.

84. In 2003, UMB created a document titled "Pulled Items."

85. The 2003 "Pulled Items" document reveals that over one hundred pieces of artwork were unaccounted for at that time. The disposition or whereabouts of these artwork pieces were or remain unknown, despite UMB's solemn duty to safeguard the assets of the Benton Trusts.

86. UMB has confirmed in writing that it does not know the disposition or location of Benton's drawing *Aunt Nina Lewis*.

**F. Lack of Accurate Valuations and Improper Sales**

87. UMB has advertised that it "only partners with qualified, respected and certified appraisers[,]" that UMB presents its clients "with the best appraisal resources according to their individual needs[,]" and that UMB "understand[s] that an accurate and fair assessment of your property is a crucial step in the fine art management process." A true and accurate copy of UMB's Fine Art Management brochure is attached hereto as **Exhibit 3**.

88. For a period of over forty years after the inception of the trusts, valid appraisals of assets of the Benton Trusts were not obtained by UMB.

89. Purported appraisals of certain assets of the Benton Trusts obtained by UMB were not valid for reasons including that:

a. The appraisals were conducted by individuals or entities with direct conflicts of interest, including the very galleries purchasing Benton artwork; and

b. The appraisals did not comport with appraisal or industry standards.

90. The first valid appraisal of some of the artwork of the Benton Trusts obtained by UMB occurred in or around 2018, with an addendum in 2019.

91. UMB subsequently hired another appraiser, at the expense of the Benton Trusts, to critique the 2019 addendum.

Electronically Filed - Probate Kansas City - December 17, 2019 - 12:44 PM

92. In part based on the lack of valid appraisals obtained by UMB and lack of a complete inventory, UMB has not maintained adequate insurance coverage for the Benton Trusts.

93. In regard to the sale of the artwork and other property of the Benton Trusts, UMB did not take the prudent and legally-required actions to reasonably administer and manage the Benton Trusts and the business thereof.

94. Numerous assets of the Benton Trusts have been gifted from the Benton Trusts without legal authority.

95. UMB did not obtain valid appraisals of artwork and other property that has been lost, stolen, gifted, or sold from the Benton Trusts.

96. UMB did not obtain valid appraisals contemporaneous with gifts or sales of property of the Benton Trusts to determine the fair market value of such items at the time of the gift or sale.

97. UMB sold artwork and other property of the Benton Trusts without testing the market.

98. UMB has admitted it relied on its purported appraisals, regardless of the age of the appraisal and despite the fact that they were not valid for reasons including those described above or otherwise not reliable to determine fair market value, to evaluate the fairness of the price offered for artwork and other property it sold from the Benton Trusts.

99. UMB sold artwork and other property of the Benton Trusts below the invalid appraised values.

100. UMB sold artwork and other property of the Benton Trusts below fair market value.

101. UMB sold artwork and other property of the Benton Trusts well below the highest price that could be attained.

Electronically Filed - Probate Kansas City - December 17, 2019 - 12:44 PM

102. UMB failed to devise a marketing plan or other strategy to sell artwork or other property from the Benton Trusts.

103. UMB failed to take reasonable actions to enhance and maximize the value of the artwork and other property of the Benton Trusts.

104. UMB did not sell the Benton artwork at public auction, which would have more accurately assured and brought in a fair market value price.

105. UMB sold artwork and other property from the Benton Trusts, including Benton artwork, to individuals and entities in private sales for less than fair market value or the highest value that could be attained.

106. UMB sold artwork and other property of the Benton Trusts in large batches.

107. UMB's sales of art and other property from the Benton Trusts, including the sale of many of the finest artworks by Benton, occurred without notification to the Plaintiffs.

108. The sales of property from the Benton Trusts have been for prices lower than the Plaintiffs would have agreed to accept or otherwise consented.

**G. Self-Dealing and Promotion**

109. UMB sold numerous pieces of artwork and other property from the Benton Trusts relatively early into the inception of the trusts.

110. UMB sold many of the more valuable pieces in the Benton Trusts years prior to the time in which the value for these pieces would be maximized.

111. Said sales occurred despite the better and more prudent course of waiting decades to sell the Benton artwork to ensure that the value of the Benton artwork was maximized for the benefit of the Benton Trusts.

112. UMB used the artwork and property of the Benton Trusts as if it were its own.

113. The Kemper Museum of Modern Art has several Benton works, including *Desert*

Electronically Filed - Probate Kansas City - December 17, 2019 - 12:44 PM

*Artist*. *Desert Artist* is shown as being gifted to the museum by "Mr. and Mrs. R. Crosby Kemper, Jr." *Desert Artist*, however, was bequeathed in the Second Codicil to Thomas Hart Benton's Will and ordered distributed to the Nelson Gallery Foundation.

114. UMB hung artwork of the Benton Trusts at UMB's various locations and used artwork of the Benton Trusts in its advertising and at charitable events.

115. UMB's use of artwork and property of the Benton Trusts in this manner has been used to promote UMB, including its position as Trustee of the Benton Trusts.

116. UMB has otherwise actively promoted its position as Trustee of the Benton Trusts as an advertising tool in order to gain new clients.

117. Prominent in UMB's advertising created around September 2014 regarding UMB's expertise in Fine Art Management Services is a painting by Benton.

118. UMB invites artists and collectors of fine art to utilize UMB's alleged expertise to safeguard and manage their collections. *See generally* **Ex. 3**.

119. UMB advertises its "Fine Art Management Services," about which it says the following:

> **Our Reputation and Relationships in the Industry Allow Us to Provide Unparalleled Service to Artists and Collectors**
>
> Our team has established long-standing relationships with a variety of fine-art resources across the nation, ensuring that you have access to best-in-class industry leaders. UMB has a genuine interest in and understanding of fine arts, garnering a reputation that is widely-recognized and respected well beyond our Midwest roots.

**Ex. 3** at 1.

120. UMB claims that it provides, "**A Comprehensive Selection of Fine Art Management Services to Meet Your Needs".**

121. Among the services advertised by UMB are:

Electronically Filed - Probate Kansas City - December 17, 2019 - 12:44 PM

- Collection management, consignment, and sales
- Inventory and appraisal services
- Storage, conservation, and restoration
- Insurance
- Artist legacy planning and management

(*Trust and Lifestyle Management*, UMB, https://www.umb.com/personal/invest-and-protect/private-wealth-management/trust-services (last visited Dec. 12, 2019) (**Exhibit 4**)).

122. UMB's advertisements have described these services in greater detail, as demonstrated in **Exhibit 3**.

123. UMB's use of artwork and property from the Benton Trusts has been without notification to the beneficiaries and without compensation to the Benton Trusts.

**H. Preservation and Storage**

124. In its advertisements, including those using Benton artwork, UMB has claimed special expertise in preserving the physical integrity of art collections entrusted to UMB:

> **Storage and Custody**
>
> We offer climate-controlled vaults to store and carefully preserve our clients' fine art and other unique assets. With 24-hour security, fire protection and dual-entry control, you can enjoy peace of mind knowing your property is safe and secure.

**Ex. 3** at 2.

125. Despite UMB's advertising and purported expertise, UMB has not taken appropriate measures required to preserve and store the artwork and other property of the Benton Trusts.

126. UMB charged and paid itself from the Benton Trusts hundreds of thousands of dollars to store the artwork and other property of the Benton Trusts and to construct a vault to store

Electronically Filed - Probate Kansas City - December 17, 2019 - 12:44 PM

those items.

127. UMB constructed said vault and charged the Benton Trusts for such construction despite having proper storage facilities available at a lower cost to the Benton Trusts.

128. Despite the existence of such facilities, the artwork and other property of the Benton Trusts is currently stored in a lockbox depository.

129. The current storage facility of the property of the Benton Trusts does not have appropriate climate controls and other conditions necessary for the proper preservation and storage of art and other property of the Benton Trusts, including Benton drawings and paintings.

130. The artwork and other property of the Benton Trusts previously had been stored in UMB's basement and other locations lacking appropriate conditions for the storage of fine art and other property of the Benton Trusts.

131. Such locations exposed the property to issues such as a lack of climate control, which had detrimental effects on the artwork and other property.

132. As described above, the artwork of the Benton Trusts has otherwise been displayed, loaned, etc., in manners not intended to increase the value of the art and that were otherwise inappropriate for maximizing the safety, security, and preservation of the artwork.

133. UMB's lack of adequate preservation and storage measures have damaged the artwork and property of the Benton Trusts, including artwork by Benton.

### I. UMB has Failed to Maximize Revenue Through Promoting, Copyrighting, and Licensing Artwork

134. In connection with its efforts to maximize the benefits to owners of fine art collections, UMB claims an expertise in managing intangible assets associated with such artwork and, in its advertisements, has stated:

**Copyright and Licensing Associations**

Electronically Filed - Probate Kansas City - December 17, 2019 - 12:44 PM

> Controlling the circumstances of how and when an artist's work is reproduced and collecting royalties for reproductions are essential. On behalf of our artist clients and their estates, UMB partners closely with the Visual Artists and Gallery Association (VAGA). VAGA is an artists' rights organization and licensing agency representing thousands of visual creators worldwide, ranging from those who are just starting out to the most well-known in the art world. Through VAGA, we can set and collect royalties, as well as administer and oversee licensing agreements.

**Ex. 3** at 1.

135. In violation of its fiduciary duties as Trustee of the Benton Trusts, UMB failed to:

a. properly copyright all Benton artwork;

b. properly protect the copyrights of all Benton artwork in its custody, which has resulted in the release to the public domain of some copyrights years earlier than they otherwise would have been;

c. properly renew the copyrights of all Benton artwork;

d. administer and oversee licensing agreements related to Benton artwork;

e. promote licensing of Benton artwork;

f. control the circumstances of how and when Benton artwork has been reproduced;

g. prosecute infringements of Benton copyrights and licensing agreements related to Benton artwork; and

h. set and collect royalties for reproductions of Benton artwork.

136. Due to UMB's violations of its fiduciary duties as Trustee, the Benton Trusts have suffered damages because Benton artwork has been reproduced in several instances without permission or compensation to the Benton Trusts and their beneficiaries.

137. In addition to failing to protect the intellectual property rights of the Benton Trusts, UMB failed to promote Benton artwork in a manner such that the value of his work would increase and be maximized.

Electronically Filed - Probate Kansas City - December 17, 2019 - 12:44 PM

138. UMB sold some of the most significant and highly valued works of Benton early in the life of the Benton Trusts and sold art and other property of the Benton Trusts without a marketing plan.

139. During his life, Benton would create lithographs to sell or otherwise distribute in order to build up the market for the future sale of the full-size painting.

140. The lithographs would be created in packages of approximately 75 to 250 depending on the significance of the painting.

141. UMB failed to follow Benton's successful practice and instead sold full-size paintings prior to selling the associated lithographs.



142. *Forward Pass* is one of Benton's paintings that was owned by the Benton Trusts and had a large supply of lithographs. UMB sold the full-size painting of *Forward Pass* for only $60,000 in 1983 and then subsequently sold the associated lithographs.

Electronically Filed - Probate Kansas City - December 17, 2019 - 12:44 PM



143. In comparison, Plaintiff Jessie Benton instructed UMB to sell lithographs of *Wyoming Autumn* prior to the sale of the full-size painting. The lithograph sales built the market so that the full-size painting sold for $1,500,000.00 in 2015.

144. *Wyoming Autumn* is a painting of lesser relative value than *Forward Pass*.

145. Had UMB properly followed a business plan as to the artwork and other property of the Benton Trusts, such as Benton's practice of first selling lithographs to build up the market for a full-size painting and/or waiting an appropriate time to sell the artwork, the more significant and highly valued artworks would have sold at exponentially higher values.

146. UMB's violations of its fiduciary duties have caused and resulted in, and continue to cause and result in, significant loss of income and damages, including future income and damages, to the Benton Trusts.



Case 4:21-cv-00710-SRB Document 1-1 Filed 10/01/21 Page 28 of 48

Electronically Filed - Probate Kansas City - December 17, 2019 - 12:44 PM

### J. Investments, Taxes, and Trust Fees

147. UMB failed to prudently invest assets of the Benton Trusts, thereby causing significant economic loss to the Benton Trusts.

148. Due to UMB's violations of its fiduciary duties and its management of the assets of the Benton Trusts, the Benton Trusts have incurred excessive tax liabilities and individual losses.

149. UMB has charged the Benton Trusts significant fees and expenses for its administration and management of the Benton Trusts, which should be recovered by the Benton Trusts for UMB's breaches.

150. UMB's actions and failures described herein have resulted in an excess of millions of dollars in damages to the Benton Trusts.

## COUNT I – REMOVAL OF UMB AS TRUSTEE OF THE BENTON TRUSTS

151. Plaintiffs incorporate by reference the facts and allegations contained in the preceding paragraphs as if fully set forth herein.

152. Pursuant to § 456.7-706.1, as qualified beneficiaries under the Benton Trusts, Plaintiffs are entitled to request that the Court remove UMB as the Trustee of the Benton Trusts.

153. Section 456.706.2 states:

> 2. The court within its discretion may remove and replace a trustee under the following circumstances:
>
> (1) the trustee has committed a serious breach of trust;
>
> (2) lack of cooperation among cotrustees substantially impairs the administration of the trust;
>
> (3) because of unfitness, unwillingness, or persistent failure to administer the trust effectively, the court determines that removal of the trustee best serves the interests of the beneficiaries; or
>
> (4) the trustee has substantially and materially reduced the level of services

Electronically Filed - Probate Kansas City - December 17, 2019 - 12:44 PM

provided to that trust and has failed and reinstate a substantially equivalent level of services within ninety days after receipt of notice by the settlor, a cotrustee, or a qualified beneficiary or removal is requested by all of the qualified beneficiaries and in either such case the party seeking removal establishes to the court that:

(a) removal of the trustee best serves the interests of all of the beneficiaries;

(b) removal of the trustee is not inconsistent with a material purpose of the trust; and

(c) a suitable costrustee or successor trustee is available and willing to serve.

154. As set forth in this Petition, removal of UMB is warranted pursuant to § 456.7-706.2 for the following reasons:

a. Pursuant to § 456.7-706.2(1), as set forth in this Petition, including Count II below, UMB has committed serious breaches of trust, including that:

i. UMB breached the duty of loyalty it owed to the beneficiaries of the Benton Trusts and failed to act in good faith in the administration of the Benton Trusts;

ii. UMB breached its duty to administer the trust as a prudent person would and failed to comply with the express directions contained in the Benton Trusts;

iii. UMB failed to utilize its special skill in the handling of the valuable artwork contained in the Benton Trusts or, alternatively, never possessed the special skills it represented it possessed in the handling of valuable artwork;

iv. UMB failed to take reasonable steps to take control of and protect the property of the Benton Trusts, including, but not limited to, the works of


Case 4:21-cv-00710-SRB Document 1-1 Filed 10/01/21 Page 30 of 48

Electronically Filed - Probate Kansas City - December 17, 2019 - 12:44 PM

art owned by the Benton Trusts;

v. UMB failed to maintain adequate, accurate, and complete records of the Benton Trusts;

vi. UMB failed to properly provide the beneficiaries of the Benton Trusts with adequate, complete, and accurate annual accountings;

vii. UMB failed to prudently invest and prudently administer the Benton Trusts;

viii. UMB failed to properly maintain the property of the Benton Trusts;

ix. UMB failed to maximize the value of the art held by the Benton Trusts; and

x. UMB engaged in self-dealing.

b. Pursuant to § 456.7-706.2(3), as set forth in this Petition, UMB is unfit, unwilling, and/or has persistently failed to administer the trust effectively and the removal of UMB as the Trustee of the Benton Trusts best serves the interests of the beneficiaries, for reasons including, but not limited to, that:

i. UMB failed to conduct an appropriate initial inventory of the assets of the Benton Trusts;

ii. UMB failed to take reasonable steps to exercise control of and protect the property of the Benton Trusts, including, but not limited to, the works of art owned by the Benton Trusts;

iii. UMB failed to maintain adequate, accurate, and complete records of the Benton Trusts;

iv. UMB failed to properly provide the beneficiaries of the Benton Trusts

Electronically Filed - Probate Kansas City - December 17, 2019 - 12:44 PM

with adequate, complete, and accurate annual accountings;

v. UMB failed to prudently invest and prudently administer the Benton Trusts;

vi. UMB failed to properly maintain the property of the Benton Trusts;

vii. UMB failed to copyright and license the art held by the Benton Trusts;

viii. UMB failed to maximize the value of the art held by the Benton Trusts; and

ix. UMB engaged in self-dealing.

c. Pursuant to § 456.7.706.2(4), as set forth in this Petition, UMB has substantially and materially reduced the level of services provided to the Benton Trusts and removal is requested by all of the qualified beneficiaries, the Plaintiffs in this case, and:

i. Removal of UMB best serves the interests of all Plaintiffs, the beneficiaries of the Benton Trusts; and

ii. Removal of UMB as Trustee of the Benton Trusts is not inconsistent with any material purpose of the Benton Trusts and, instead, a different trustee would maximize the value of the assets and income of the Benton Trusts.

155. UMB's actions as Trustee of the Benton Trusts have, and continue to, put the Benton Trusts and the assets of these trusts in serious jeopardy.

156. UMB is unfit to administer and manage the Benton Trusts because it lacks the competence and expertise required to manage and administer the assets, particularly the Benton artwork, of the Benton Trusts.

WHEREFORE, for Count I, Plaintiffs pray the Court to enter an Order and Judgment

removing Defendant UMB as Trustee of the Benton Trusts and appointing a suitable, qualified, and independent entity to serve as the successor trustee, for an award of Plaintiffs' legal fees and expenses incurred in this matter pursuant to § 456.10-1004, and for such other relief as the Court deems just and proper.

**COUNT II – BREACH OF TRUST**

157. Plaintiffs incorporate by reference the facts and allegations contained in the preceding paragraphs as if fully set forth herein.

158. While acting as Trustee of the Benton Trusts, UMB owed a duty of the loyalty to the beneficiaries and was to act in good faith in its administration of the Benton Trusts and act solely in the interests of the beneficiaries. *See* §§ 456.8-801-456.8-802.

159. UMB breached the duty of loyalty it owed to the beneficiaries of the Benton Trusts and failed to act in good faith in the administration of the Benton Trusts, including, but not limited to, as follows:

a. Failing to maintain and properly provide the beneficiaries of the Benton Trusts with adequate, complete, and accurate annual accountings;

b. Using its role as Trustee of the Benton Trusts as an advertising tool for UMB's own financial gain and prominence;

c. Failing to notify or obtain the permission of the beneficiaries of the Benton Trusts regarding UMB's use of assets of the Benton Trusts for UMB's financial gain;

d. Failing to compensate the Benton Trusts for UMB's use of the property of the Benton Trusts for UMB's own financial gain; and

e. Entering into inappropriate transactions that caused damage to the Benton Trusts.

160. While acting as Trustee of the Benton Trusts, UMB owed a duty to administer the


Case 4:21-cv-00710-SRB Document 1-1 Filed 10/01/21 Page 33 of 48
Electronically Filed - Probate Kansas City - December 17, 2019 - 12:44 PM

Electronically Filed - Probate Kansas City - December 17, 2019 - 12:44 PM

Benton Trusts as a prudent person would, by considering the purposes, terms, distribution requirements, and other circumstances of the Benton Trusts. *See* § 456.8-804.

161. UMB breached its duty to administer the Benton Trusts as a prudent person would and failed to comply with the express directions contained in the Benton Trusts, including, but not limited to, as follows:

a. Failing to maintain and properly provide the beneficiaries of the Benton Trusts with adequate, complete, and accurate annual accountings;

b. Failing to prepare a legally sufficient inventory of all assets, including all artwork, of the Benton Trusts;

c. Failing to protect the copyright interests of assets of the Benton Trusts, including Benton artwork;

d. Failing to consider, sell, and maximize the licensing rights of assets of the Benton Trusts, including Benton artwork;

e. Failing to properly store, preserve, and protect assets held and owned by the Benton Trusts, including artwork;

f. Failing to obtain contemporaneous and valid appraisals prior to the sale of assets held and owned by the Benton Trusts, including artwork, to determine the fair market value of the assets;

g. Failing to test the market prior to the sale of assets held and owned by the Benton Trusts, including artwork;

h. Failing to wait a sufficient period of time prior to selling assets held and owned by the Benton Trusts, including artwork, in order to maximize the value of these assets;

i. Failing to obtain a fair market value for assets of the Benton Trusts, including

Electronically Filed - Probate Kansas City - December 17, 2019 - 12:44 PM

artwork, that were sold by UMB;

j. Failing to achieve the highest price that could be obtained for assets of the Benton Trusts, including artwork, that were sold by UMB;

k. Failing to properly invest assets of the Benton Trusts;

l. Misplacing or losing assets of the Benton Trusts;

m. Improperly gifting assets of the Benton Trusts;

n. Using its role as Trustee of the Benton Trusts as an advertising tool for UMB's own financial gain and prominence;

o. Failing to notify or obtain the permission of the beneficiaries of the Benton Trusts regarding UMB's use of assets of the Benton Trusts for UMB's financial gain;

p. Failing to compensate the Benton Trusts for UMB's use of the property of the Benton Trusts;

q. Entering into inappropriate transactions that caused damage to the Benton Trusts; and

r. Failing to marshal all of the assets of the Benton Trusts.

162. A trustee who is named trustee in reliance upon the trustee's representation that the trustee has special skills or expertise is required to use those represented special skills or expertise in administration of the trust. *See* § 456.8-806.

163. UMB has represented to Benton and Rita P. Benton, the beneficiaries of the Benton Trusts, and to the public at large that it has special skills in fine art management, such as the artwork owned by the Benton Trusts.

164. UMB failed in its duty to utilize its special skill in the handling of the valuable artwork contained in the Benton Trusts or, alternatively, never possessed the special skills it



Case 4:21-cv-00710-SRB Document 1-1 Filed 10/01/21 Page 35 of 48

Electronically Filed - Probate Kansas City - December 17, 2019 - 12:44 PM

represented it possessed in the handling of valuable artwork, including, but not limited to, as follows:

a. Failing to prepare a legally sufficient inventory of all assets, including all artwork, of the Benton Trusts;

b. Failing to protect the copyright interests of assets of the Benton Trusts, including Benton artwork;

c. Failing to consider, sell, and maximize the licensing rights of assets of the Benton Trusts, including Benton artwork;

d. Failing to properly store, preserve, and protect assets held and owned by the Benton Trusts, including artwork;

e. Failing to obtain contemporaneous and valid appraisals prior to the sale of assets held and owned by the Benton Trusts, including artwork, to determine the fair market value of the assets;

f. Failing to test the market prior to the sale of assets held and owned by the Benton Trusts, including artwork;

g. Failing to wait a sufficient period of time prior to selling assets held and owned by the Benton Trusts, including artwork, in order to maximize the value of these assets;

h. Failing to obtain a fair market value for assets of the Benton Trusts, including artwork, that were sold by UMB;

i. Failing to achieve the highest price that could be obtained for assets of the Benton Trusts, including artwork, that were sold by UMB;

j. Failing to properly invest assets of the Benton Trusts;

k. Misplacing or losing assets of the Benton Trusts; and

l. Improperly gifting assets of the Benton Trusts.

165. While acting as the Trustee of the Benton Trusts, UMB had a duty to take reasonable steps to exercise control of and protect the property of the Benton Trusts, including, but not limited to, all works of art owned by the Benton Trusts. *See* § 456.8-809.

166. UMB breached its duty and failed to take reasonable steps to exercise control of and protect the property of the Benton Trusts, including, but not limited to, as follows:

a. Failing to prepare a legally sufficient inventory of all assets, including all artwork, of the Benton Trusts;

b. Failing to protect the copyright interests of assets of the Benton Trusts, including Benton artwork;

c. Failing to consider, sell, and maximize the licensing rights of assets of the Benton Trusts, including Benton artwork;

d. Failing to properly store, preserve, and protect assets held and owned by the Benton Trusts, including artwork;

e. Failing to obtain contemporaneous and valid appraisals prior to the sale of assets held and owned by the Benton Trusts, including artwork, to determine the fair market value of the assets;

f. Failing to test the market prior to the sale of assets held and owned by the Benton Trusts, including artwork;

g. Failing to wait a sufficient period of time prior to selling assets held and owned by the Benton Trusts, including artwork, in order to maximize the value of these assets;

h. Failing to obtain a fair market value for assets of the Benton Trusts, including artwork, that were sold by UMB;



Electronically Filed - Probate Kansas City - December 17, 2019 - 12:44 PM

Electronically Filed - Probate Kansas City - December 17, 2019 - 12:44 PM

i. Failing to achieve the highest price that could be obtained for assets of the Benton Trusts, including artwork, that were sold by UMB;

j. Failing to properly invest assets of the Benton Trusts;

k. Failing to minimize taxes paid by the Benton Trusts;

l. Misplacing or losing assets of the Benton Trusts;

m. Improperly gifting assets of the Benton Trusts; and

n. Failing to marshal all of the assets of the Benton Trusts.

167. While acting as the Trustee of the Benton Trusts, UMB had a duty to maintain adequate, accurate, and complete records of the Benton Trusts. *See* § 456.8-810.

168. UMB failed in its duty to maintain adequate, accurate, and complete records of the Benton Trusts, including, but not limited to, as follows:

a. Failed to maintain and properly provide the beneficiaries of the Benton Trusts with adequate, complete, and accurate annual accountings; and

b. Failed to prepare a legally sufficient inventory of all assets, including all artwork, of the Benton Trusts.

169. While acting as the Trustee of the Benton Trusts, UMB had a duty to annually provide an accounting showing all "receipts, disbursements, and distributions of principal and income … and uninvested principal and the undistributed income on hand at the time of the accounting" to all legally competent beneficiaries of the Benton Trusts. **Ex. 1** at 20; **Ex. 2** at 17.

170. UMB failed in its duty to properly provide the beneficiaries with adequate, complete, and accurate annual accountings, including, but not limited to, as follows:

a. Failing to prepare a legally sufficient inventory of all assets, including all artwork, of the Benton Trusts;

Electronically Filed - Probate Kansas City - December 17, 2019 - 12:44 PM

b. Failing to provide the beneficiaries with an annual accounting that adequately, completely, and accurately informed them of the assets and activities of the Benton Trusts;

c. Failing to notify or advise the beneficiaries of the sale of assets, including artwork, of the Benton Trusts;

d. Failing to advise the beneficiaries that UMB was using its role as Trustee of the Benton Trusts as an advertising tool for UMB's own financial gain and prominence;

e. Failing to advise the beneficiaries that UMB was using assets of the Benton Trusts for UMB's financial gain;

f. Failing to advise the beneficiaries that UMB was not compensating the Benton Trusts for UMB's use of the property of the Benton Trusts; and

g. Entering into inappropriate transactions that caused damage to the Benton Trusts.

171. UMB, while acting as the Trustee of the Benton Trusts, breached its statutory and fiduciary duties by engaging in self-dealing including, but not limited to, as follows:

a. Using its role as Trustee of the Benton Trusts as an advertising tool for UMB's own financial gain and prominence;

b. Failing to notify or obtain the permission of the beneficiaries of the Benton Trusts regarding UMB's use of assets of the Benton Trusts for UMB's financial gain;

c. Failing to compensate the Benton Trusts for UMB's use of the property of the Benton Trusts; and

d. Entering into inappropriate transactions that caused damage to the Benton Trusts.

172. As set forth in this Petition, UMB further breached its fiduciary duties to the Benton Trusts for reasons including that UMB:



Case 4:21-cv-00710-SRB Document 1-1 Filed 10/01/21 Page 39 of 48

Electronically Filed - Probate Kansas City - December 17, 2019 - 12:44 PM

a. Failed to consider the interests of or consult with the beneficiaries regarding the sale assets from the Benton Trusts, including unique assets; and

b. Failed in its duty to act only in the interests of the beneficiaries. *See, e.g.*, *Jo Ann Howard & Assoc., P.C., v. Cassity*, 395 F.Supp.3d 1022, 1172 (E.D. Mo. 2019).

173. The Benton Trusts, as well as the Plaintiffs as beneficiaries of the Benton Trusts, have been damaged as a result of UMB's actions.

174. Plaintiffs pray the Court to:

a. Order UMB to redress its breaches of trust by paying money to the Benton Trusts in an amount equal the damages sustained by the Benton Trusts as a result of UMB's breaches;

b. Order UMB to restore trust property in its possession, custody, or control and/or in the possession custody or control of any of its agents or owners;

c. As set forth in Count I herein, order UMB removed as Trustee of the Benton Trusts; and

d. As set forth in Count III herein, void various self-dealing acts of UMB related to the Benton Trusts and recover the property or proceeds resulting therefrom.

175. Pursuant to § 456.10-1002, UMB is liable to Plaintiffs for the greater of (1) the amount required to restore the value of the Benton Trusts to what they would be had UMB not breached its duties as Trustee of the Benton Trusts or (2) the profit UMB made by reason of the breaches.

176. UMB's actions as described herein were committed in bad faith or with reckless indifference to the purposes of the trust or the interests of the beneficiaries.

177. UMB's actions as described herein were willful, wanton, and malicious and

Electronically Filed - Probate Kansas City - December 17, 2019 - 12:44 PM

demonstrated a complete indifference or conscious disregard for the rights and interests of the Benton family, who are the beneficiaries of the Benton Trusts, justifying an award of punitive damages.

178. The conduct of UMB showed complete indifference to and/or the conscious disregard for the rights of the beneficiaries who were dependent upon UMB as Trustee of the Benton Trusts for its accounting, trustworthiness, alleged special skills, and financial acumen. UMB took advantage of this dependency and vulnerability for its own benefit, justifying an award of punitive damages.

179. Pursuant to § 456.10-1004, Plaintiffs pray that the Court award them the costs and expenses, including reasonable attorneys' fees, which were expended in bringing this action. Under the circumstances set out herein, justice and equity require such an award.

WHEREFORE, for Count II, Plaintiffs pray the Court to enter a judgment against Defendant UMB, (1) in an amount necessary to redress UMB's breaches of its statutory and fiduciary duties as Trustee of the Benton Trusts; (2) in an amount, in excess of one million dollars, equal to the greater of (a) the amount necessary to restore the value of the Benton Trusts' property and Benton Trusts' distributions to what they would have been had UMB's breaches of its statutory and fiduciary duties as a Trustee not occurred or (b) the profit UMB made by reason of the breaches; (3) order UMB to restore trust property in its possession, custody, or control and/or in the possession custody or control of any of its agents or owners; (4) order that UMB be liable for Plaintiffs' reasonable legal fees and expenses incurred in this matter; (5) for punitive damages in such sums as will serve to punish UMB and deter UMB and others from engaging in like conduct; and (6) for such other relief as the Court deems just and proper.

Electronically Filed - Probate Kansas City - December 17, 2019 - 12:44 PM

**COUNT III – AVOIDANCE OF SELF-DEALING TRANSACTIONS**

180. Plaintiffs incorporate by reference the facts and allegations contained in the preceding paragraphs as if fully set forth herein.

181. UMB entered into transactions involving the investment and management of property of the Benton Trusts which benefited UMB directly at the expense and detriment of the beneficiaries of the Benton Trusts.

182. Pursuant to § 456.8-802, Plaintiffs are entitled to a judgment voiding all transactions involving a conflict between UMB and the beneficiaries of the Benton Trusts.

183. None of the sales and other transactions of property of the Benton Trusts that UMB entered into which benefited UMB directly were authorized by the terms of the Benton Trusts, approved by the Court, or consented to by the beneficiaries of the Benton Trusts.

184. Plaintiffs pray the Court to void all sales and other transactions of property of the Benton Trusts that UMB entered into without the required authorization, approval, or consent which benefited UMB directly at the expense and detriment of the beneficiaries of the Benton Trusts; declare the Benton Trusts to be the legal and lawful owner of all such property; and order UMB to return said property to the possession, custody, and control of the Benton Trusts.

WHEREFORE, for Count III, Plaintiffs pray the Court to enter a judgment and order voiding all sales and other transactions involving property of the Benton Trusts entered into without the required authorization, approval or consent which benefited UMB directly at the expense and detriment of the beneficiaries of the Benton Trusts; declaring the Benton Trusts to be the legal and lawful owner of all such property; ordering UMB to return said property to the possession, custody, and control of the Benton Trusts; and for such other relief as the Court deems just and proper.


Case 4:21-cv-00710-SRB Document 1-1 Filed 10/01/21 Page 42 of 48

Electronically Filed - Probate Kansas City - December 17, 2019 - 12:44 PM

**COUNT IV – VIOLATION OF THE PRUDENT MAN RULE AND PRUDENT INVESTOR ACT**

185. Plaintiffs incorporate by reference the facts and allegations contained in the preceding paragraphs as if fully set forth herein.

186. Prior to Missouri's adoption of the Prudent Investor Act in 1996, the investment of trust assets was governed by the common law Prudent Man Rule. *O'Riley v. U.S. Bank, N.A.*, 412 S.W.3d 400, 413 (Mo. App. W.D. 2013).

187. The Prudent Man Rule provided:

> In making investments of trust funds the trustee is under a duty to the beneficiary (a) in the absence of provisions in the terms of the trust or of a statute otherwise providing, to make such investments and only such investments as a prudent man would make of his own property having primarily in view the preservation of the estate and the amount and regularity of the income to be derived.

*Id.* (quoting *Vest v. Bialson*, 293 S.W.2d 369, 379-80 (Mo. 1956) (quoting RESTATEMENT (Second) of Trusts § 227(a))).

188. Missouri adopted the Prudent Investor Act in 1996. *See* §§ 469.900-469.913.

189. Pursuant to the Missouri Prudent Investor Act, §§ 469.900 to 469.913, a trustee "who invests and manages trust assets owes a duty to the beneficiaries of the trust to comply with the prudent investor rule." § 469.901.

190. Pursuant to the Missouri Prudent Investor Act, a trustee "shall invest and manage trust assets as a prudent investor would, by considering the purposes, terms, distribution requirements, and other circumstances of the trust. In satisfying this standard, the trustee shall exercise reasonable care, skill, and caution." § 469.902.

191. UMB owed a duty of the loyalty to the beneficiaries and was to act in good faith in its administration of the Benton Trusts and act solely in the interests of the beneficiaries as to its investments made on behalf of the Benton Trusts.

192. Due to UMB's failure to file adequate, complete, and accurate annual accountings and reports, UMB has not provided Plaintiffs with adequate, accurate, and complete information concerning all investments made by UMB or other information concerning assets of the Benton Trusts, investments of the Benton Trusts, and the return on investment for any such investments.

193. The vague and limited account records provided by UMB to Plaintiffs show that UMB failed to prudently invest assets of the Benton Trusts.

194. UMB's sale and use of assets of the Benton Trusts, including the method and timing of the sales of the artwork owned by the Benton Trusts, were not prudent investing activities, not made in good faith, not solely in the interests of the beneficiaries, and have resulted in substantial losses to the Benton Trusts.

195. As a direct result of UMB's decision to engage in investment activities that were imprudent, not made in good faith, and/or not made solely in the interests of the beneficiaries, Plaintiffs have been damaged because, between 1975 and present, the Benton Trusts have lost over one million dollars in assets and money, a loss exacerbated by the loss of reasonable investment gains and gains in the value of the artwork owned by the Benton Trusts that would have occurred had the Benton Trusts' assets been prudently and properly handled and invested by UMB.

196. UMB's actions as described herein were committed in bad faith or with reckless indifference to the purposes of the trust or the interests of the beneficiaries.

197. UMB's actions as described herein were willful, wanton, and malicious and demonstrated a complete indifference or conscious disregard for the rights and interests of the Benton family, who are the beneficiaries of the Benton Trusts, justifying an award of punitive damages.

198. The conduct of UMB showed complete indifference to and/or the conscious



Electronically Filed - Probate Kansas City - December 17, 2019 - 12:44 PM

Case 4:21-cv-00710-SRB Document 1-1 Filed 10/01/21 Page 44 of 48

Electronically Filed - Probate Kansas City - December 17, 2019 - 12:44 PM

disregard for the rights of the beneficiaries who were dependent upon UMB as Trustee of the Benton Trusts for its accounting, trustworthiness, alleged special skills, and financial acumen. UMB took advantage of this dependency and vulnerability for its own benefit, justifying an award of punitive damages.

199. Plaintiffs pray that the Court award the costs and expenses, including reasonable attorneys' fees, they have expended in bringing this action. Under the circumstances, justice and equity require such an award.

WHEREFORE, on Count IV, Plaintiffs pray the Court to enter a judgment against Defendant UMB in an amount equal to the valuation of the Benton Trusts' assets had they been invested prudently, in good faith, and/or solely in the interests of the beneficiaries between 1975 and present and the valuation of the Benton Trusts' assets as invested by UMB during that same period, in an amount, in excess of one million dollars, for an award of Plaintiffs' fees and expenses incurred in this matter pursuant to § 456.10-1004, for punitive damages in such sums as will serve to punish UMB and deter UMB and others from engaging in like conduct, and for such other relief as the Court deems just and proper.

**COUNT V – PRELIMINARY AND PERMANENT INJUNCTION**

200. Plaintiffs incorporate by reference the facts and allegations contained in the preceding paragraphs as if fully set forth herein.

201. Section 456.10-1001 authorizes a Court to enjoin a trustee from committing a breach of trust or otherwise order any other appropriate relief.

202. Issuance of a preliminary injunction depends on the movant's likelihood of success on the merits and whether the movant will suffer irreparable harm if the injunctive relief is not granted pending final resolution of the case.


Case 4:21-cv-00710-SRB Document 1-1 Filed 10/01/21 Page 45 of 48

Electronically Filed - Probate Kansas City - December 17, 2019 - 12:44 PM

203. The purpose of a preliminary injunction is to maintain the status quo pending the final adjudication of the case.

204. Plaintiffs pray that the Court enter a preliminary injunction, and, in the event the Court does not remove UMB as the Trustee of the Benton Trusts, a permanent injunction, that enjoins UMB from taking any action relating to the Benton Trusts and/or actions relating to the assets of the Benton Trusts absent written consent from the Plaintiffs or Court approval.

205. Entry of a preliminary injunction barring UMB from taking any action relating to the Benton Trusts and/or actions relating to the assets of the Benton Trusts absent written consent from the Plaintiffs or Court approval will maintain the status quo pending the final adjudication of the case and UMB is not harmed in any way by such an injunction.

206. As stated above and throughout this Petition, Plaintiffs are likely to succeed in this matter and will prove that UMB breached numerous fiduciary and statutory duties that it owed to Plaintiffs and are likely to prevail in removing UMB as the Trustee of the Benton Trusts.

207. While UMB suffers no harm if such a preliminary injunction is issued, Plaintiffs will suffer irreparable harm and damages if UMB continues to act without any checks or balances and (1) continues to imprudently invest assets of the Benton Trusts, (2) continues to sell artwork owned by the Benton Trusts without taking all reasonably required steps, (3) continues to improperly maintain and care for artwork and property owned by the Benton Trusts, (4) continues to display artwork and property owned by the Benton Trusts in UMB facilities without paying any money to the Benton Trusts for such displays or taking adequate measures to protect the property, or (5) continues to do all other improper and inappropriate actions, including, but not limited to, those as set forth in this Petition.

WHEREFORE, for Count V, Plaintiffs pray the Court to enter a preliminary injunction,

and, in the event the Court does not remove UMB as the Trustee of the Benton Trusts, a permanent injunction, that enjoins UMB from taking any action relating to the Benton Trusts and/or actions relating to the assets of the Benton Trusts absent written consent from the Plaintiffs or Court approval, and for such other relief as the Court deems just and proper.

**COUNT VI – Appointment of Additional Trustee or Special Fiduciary**

208. Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

209. Section 456.7-704.4 provides that a "court may appoint an additional trustee or special fiduciary whenever the court considers necessary for the administration of the trust."

210. In administering the Benton Trusts, UMB has failed to abide by the terms of the Benton Trust, has failed to properly account for the Benton Trusts, has failed to maximize the value of the Benton Trusts, has failed to consider the objectives and intentions of Benton, and otherwise failed to properly administer the Benton Trusts.

211. Plaintiffs pray the Court to appoint an additional trustee or special fiduciary to assist and oversee UMB in its administration of the Benton Trusts.

WHEREFORE, for Count VI, Plaintiffs pray the Court to appoint an additional trustee or special fiduciary to assist and oversee UMB in its administration of the Benton Trusts and for such other relief as the Court deems just and proper.



Case 4:21-cv-00710-SRB Document 1-1 Filed 10/01/21 Page 47 of 48

Electronically Filed - Probate Kansas City - December 17, 2019 - 12:44 PM

Electronically Filed - Probate Kansas City - December 17, 2019 - 12:44 PM

Respectfully submitted,

**LANGDON & EMISON, LLC**

/s/ J. Kent Emison
J. Kent Emison MO Bar #29721
Robert L. Langdon MO Bar #23233
Michael W. Manners MO Bar #25394
John M. Tyner MO Bar #58864
O. Nicole Smith MO Bar #68406
911 Main Street
P. O. Box 220
Lexington, Missouri 64067
Telephone: (660) 259-6175
Facsimile: (660) 259-4571
bob@lelaw.com
kent@lelaw.com
mike@lelaw.com
john@lelaw.com
nicole@lelaw.com

Andre Boyda MO Bar #64638
**BOYDA LAW, LLC**
1828 Swift Avenue, Suite 302
North Kansas City, Missouri 64116
Telephone: (816) 419-8333
Facsimile: (816) 527-8589
boydalaw@gmail.com

and

Larry D. Harman MO Bar # 27120
**WITHERS, BRANT, IGOE & MULLENIX, P.C.**
2 South Main Street
Liberty, Missouri 64068
Telephone: (816) 781-4788
Facsimile: (816) 792-2807
lharman@withersbrant.com

**ATTORNEYS FOR PLAINTIFFS**